# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**NATIONAL HISPANIC CORPORATE ACHIEVERS, INC.,**

                    **Plaintiff,**

-vs-                                    **Case No.  6:08-cv-1520-Orl-31GJK**

**ELECTRA THEODORIDES-BUSTLE as Executive Director of the Florida Department of Highway Safety and Motor Vehicles,**

                    **Defendants.**

_____

# ORDER

This matter comes before the Court on the Verified Motion for Preliminary Injunction (Doc. 12) filed by the Plaintiff, National Hispanic Corporate Achievers, Inc. ("NHCA"), and the response (Doc. 15) filed by the Defendant, Electra Theodorides-Bustle ("Theodorides-Bustle"), in her capacity as Executive Director of the Florida Department of Highway Safety and Motor Vehicles (the "DMV").[1]

## I.    Background

The state of Florida operates a specialty license plate program, which is overseen by the DMV.  The state offers a wide variety of specialty license plates, from celebrations of state universities and organizations such as the Boy Scouts of America to appeals for the protection of

_____

[1]For simplicity's sake, this opinion will refer to the DMV or the state as the Defendant rather than Theodorides-Bustle.

wildlife.  Fla. Stat. § 320.08056.  Any organization that wants to have the state offer a new

specialty license plate must provide the DMV with, among other things, the results of "a scientific

sample survey of Florida motor vehicle owners that indicates at least 30,000 motor vehicle owners

intend to purchase the proposed specialty license plate."  Fla. Stat. § 320.08053.  Although the

statute does not explicitly require it, the DMV requires that the "scientific sample survey" be

conducted on a county-by-county basis, in proportion to the number of registered drivers in the

county.

The Plaintiff, which describes itself as "a Florida non-profit corporation engaged in media,

job fairs, promotion and education of Hispanic issues, and scholarship awards, among other

areas," seeks to have the state offer a new specialty license plate.  The proposed plate would bear

the slogan "Hispanics Settled Florida – 1550 to present" surrounding an illustration of a sailing

ship.  (Doc. 1-2 at 22).  The plate also would advertise the Plaintiff's web site –

"www.hispanicachievers.org" –  in large capital letters across the bottom.  (Doc. 1-2 at 22).

According to the Complaint (Doc. 1), on June 10, 2008, the DMV approved NHCA's letter

of intent, and NHCA began to move forward with the survey.  Approximately two weeks later, a

representative of the survey company notified NHCA that its proposed survey would not yield

"strong results in the non-Hispanic community".  (Doc. 1-2 at 24).  NHCA sought a variance from

the DMV to allow it to survey only Hispanic-surnamed individuals, but the DMV refused.  On

September 4, 2008, NHCA filed suit against the executive director of the DMV, seeking

declaratory and injunctive relief, arguing that the DMV's policy of requiring a statewide survey

rather than a targeted survey violated its right to free speech and denied it equal protection of the

law.  (Doc. 1 at 1).  NHCA now seeks to enjoin the DMV from requiring that it conduct a

statewide survey.  (Doc. 12 at 9).  NHCA also seeks to have the Court extend DMV's deadline for submissions of certain additional information such as a marketing plan, which deadline apparently expired on October 1, 2008.  (Doc. 12 at 9).

## II.     Standards

### A.      Injunctive Relief

The decision regarding whether to grant a preliminary injunction lies within the sound discretion of the court.  *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).  A district court may grant injunctive relief if the movant demonstrates (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that if issued, the injunction would not be adverse to the public interest.  *Id.*  In this Circuit, a preliminary injunction is "an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites."  *Id*

### B.      Free Speech

In determining whether the government has violated free speech rights, the initial inquiry is whether the speech or conduct affected by the government comes within the ambit of the First Amendment.  *One World One Family Now v. City of Miami Beach*, 175 F.3d 1282, 1287 (11th Cir. 1982) (citations omitted).  If it does, the Court then must determine whether the relevant government conduct is content-neutral or content-based.  If the relevant conduct is content-based, the government entity must show that the action is narrowly tailored and serves a compelling state interest; if the conduct is content-neutral, the government entity need only show that the action is a

permissible time, place, and manner regulation. *Id.* In the latter case, the government entity must show that the restrictions (1) are justified without reference to the content of the regulated speech, (2) are narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for communication of the information. *Id.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989)). Government regulation of expressive activity is content-neutral, even though it has an incidental effect on some speakers or messages but not others, as long as it serves some purpose unrelated to the conduct of regulated speech. *Ward*, 491 U.S. at 791, 109 S.Ct. at 2754.

### C.   Equal Protection

The purpose of the Equal Protection Clause of the Fourteenth Amendment is "to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1075, 145 L.Ed.2d 1060 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923)). The Equal Protection Clause prohibits a state from using a facially neutral law to intentionally discriminate on the basis of race. *Washington v. Davis*, 426 U.S. 229, 239-40, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). However, official action will not be held unconstitutional solely because it results in a racially disproportionate impact. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-65, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Id.*

### III.    Application

For a variety of reasons, the Plaintiff's motion falls far short of meeting the standard for

issuance of a preliminary injunction.  The Court will address the most obvious ones.

First, it is not clear that this is, in fact, a free speech case.  The state of Florida is not

prohibiting the Plaintiff from announcing that "Hispanics Settled Florida – 1550 to present" (or

advertising its website) on any vehicles that the organization might own, or of manufacturing

bumper stickers or vanity plates for members of the public to utilize on their own vehicles.  And

even assuming that the state's actions in establishing criteria for its issuance of specialty plates

falls within the ambit of the First Amendment, at this point it does not appear likely that the

Plaintiff will succeed on the merits on its free speech claim.  So far as the Plaintiff has shown, the

conduct at issue is entirely content neutral – the polling requirements and submission deadlines are

the same no matter what message an organization might want to see on a specialty license plate.

As such, the state would only need to show that its conduct is a reasonable time, place, and manner

restriction.  Although NHCA would prefer to perform its polling in a different manner (discussed

in greater detail, *infra*) and with less restrictive deadlines, it has made no showing that the

requirements put in place by the state are unreasonable.[2]

---

[2]The Plaintiff also argues that a license plate "is a traditional public forum insofar as it is a place that has traditionally been available for public expression," like a public park or street.  (Doc. 12 at 6).  For the government to exclude a speaker from a traditional public forum, its conduct must survive strict scrutiny – that is, it must show that the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.  *Cornelius v. NAACP Legal Defense Fund, Inc.*, 473 U.S. 788, 800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985).  However, NHCA has provided no support, legal or factual, for its contention that a license plate is the equivalent of a public park for First Amendment purposes.  The Court's reading of the applicable case law suggests the opposite result.  *See, e.g.*, *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714 (1974) (holding that city practice of selling advertising space on sides of its buses did not turn that

NHCA has also failed to produce any evidence that would support a finding that the specialty license plate program violates the Equal Protection Clause, either in the way it was set up by the Florida Legislature or in the way it is administered by the DMV.  All NHCA can offer is its "information and belief" that the state has discriminated by treating different groups differently for purposes of the survey, allowing some that have "failed" the survey to have their plates approved. (Doc. 12 at 7-8).  NHCA cannot provide a single detail such as the name of one of these allegedly favored groups, the time when the discrimination allegedly occurred, or the basis for this alleged information.  NHCA also asserts that the state's practice of requiring that the survey "be conducted by stratified random sample based on current vehicle registrations in Florida, county by county" has a "negative disparate discriminatory impact on Hispanics."  (Doc. 12 at 8).  However, even if NHCA were able to establish that the requirement has a disproportionate negative impact on Hispanics, this would not justify injunctive relief.  To prevail on an equal protection claim, a plaintiff must demonstrate intentional discrimination, not merely disparate impact.  *Village of Arlington Heights*, 429 U.S. at 264-65, 97 S.Ct. at 563.

In addition to the flaws in the legal theories it advances, the factual basis for the Plaintiff's case is severely lacking.  NHCA contends that it cannot meet the requirements for issuance of a specialty plate – *i.e.*, showing that there are at least 30,000 Floridians who would buy the proposed plate – if it follows the polling requirements set by the DMV.   Its only evidence on this point is an email from Jay Regan ("Regan"), an employee of the polling company it chose, who states that he "do[es] not think [NHCA] "will get strong results in the non-Hispanic community" if it conducts

---

space into a free speech forum).

its survey in accord with the DMV's requirements and that NHCA needs "to convince the State that you should only be required to conduct surveys in counties that have a sizable Hispanic population." (Doc. 1-2 at 24).  Contrary to NHCA's argument, Regan never says that a survey that samples every county will fail to reveal the required 30,000 potential buyers.  Rather, he says that such a survey would not be in NHCA's "best interests," with no further explanation.  (Doc. 1-2 at 24).  Thus, NHCA has failed to show that it will suffer any injury at all, much less an irreparable one, if the injunction does not issue.

Beyond the lack of evidence, the argument that requiring a county-by-county survey "prevents the plaintiff from obtaining a statistically relevant sample of the population subset that would be interested in purchasing the specialty plate" (Doc. 12 at 7) makes no sense.  If, as NHCA contends, a survey of Hispanic Floridians would show that the state would sell at least 30,000 of the "Hispanics Settled Florida" plates, then a properly conducted survey of *all* Floridians would show the same thing, because such a survey would include a representative sample of Hispanic Floridians.  NHCA points out that Florida's Hispanic residents are not evenly distributed throughout the state, but this is not relevant to the outcome of a properly conducted statewide survey.

These are not the only problems with the Plaintiff's motion.  For example, the Defendant also challenges NHCA's standing to pursue these claims, and contends that they are not yet ripe.  And NHCA has provided no justification for the second portion of the relief it seeks – the lifting of the October 1 deadline for submission of information such as the marketing plan.[3]  However,

---

[3]The Plaintiff's free speech and equal protection arguments are even less compelling when applied to the deadline requirement than they are when applied to the county-by-county survey

these problems are enough to demonstrate that the Plaintiff has not shown (1) a substantial

likelihood of success on the merits or (2) that it will suffer irreparable injury if the injunction does

not issue.  Accordingly, it is hereby

       **ORDERED** that on the Verified Motion for Preliminary Injunction (Doc. 12) filed by the

Plaintiff, National Hispanic Corporate Achievers, Inc. ("NHCA") is **DENIED**.

       **DONE** and **ORDERED** in Chambers, Orlando, Florida on December 3, 2008.

 

 

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

requirement.